Carmen A. Chenal #009428
Chenal Law Firm PLLC
7272 East Indian School Suite 540
Phoenix, Arizona 85021
480-207- 5180
carmenchenallaw@gmail.com
*Attorneys for Gary DeBerge and Ellen DeBerge*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re<br><br>JOHN JACOB MAY<br>BETTY RUTH MAY<br><br>Debtor. | Chapter 7<br><br>Case No.: 2:18-bk-14309-BKM |
|---|---|
| GARY DEBERGE, AND ELLEN DEBERGE,<br><br>Plaintiff,<br>v.<br><br>JOHN JACOB MAY<br>BETTY RUTH MAY<br><br>Defendant. | **Adv. Case No.:**<br><br>**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE PURSUANT 11 U.S.C. § 523** |

For its Complaint against John Jacob May and Betty Ruth May " debtor" or "defendant") to except a debt from discharge under 11 U.S.C. § 523(a)(2) and Federal Rule of Bankruptcy Procedure 4007, Plaintiffs Gary DeBerge and Ellen DeBerge ( "plaintiff" or "DeBerge") allege as follows:

**THE PARTIES**

1. Plaintiffs Gary DeBerge and Ellen DeBerge ( "**Plaintiffs**" or "**DeBerge**") are individuals who reside in Maricopa County, Arizona.

2. Defendants John Jacob May and Betty Ruth May ("**Debtors**" or "**May**") are individuals who reside at 4960 S. Gilbert Rd.1-612, Chandler, AZ 85249 and 5326 S. Fairchild Ln., Chandler, AZ 85249, Maricopa County, AZ 85018.

3. Debtor commenced this voluntary proceeding under Chapter 7 of the

Bankruptcy Code on November 21, 2018 (the "**Petition Date**").

## JURISDICTION AND VENUE

4. This is an adversary proceeding under Part VII of the Bankruptcy Rules.

5. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding pursuant to 28 U.S.C. §' 157(b)(2)(A)(I) and (O).

7. Venue is proper in this judicial district under 28 U.S.C. § 1409(a).

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiffs incorporate by reference each of the preceding allegations as if set forth in this paragraph

9. This action arises out of John May's fraudulent inducements and statements, false pretenses, and misrepresentations related to real estate transactions resulting in a substantial debt owed by May to Plaintiffs.

## RENAISSANCE CONSORTIUM, LLC ("RC")

10. Debtor at all times relevant hereto has been and is in the business of purchasing real estate and reselling wholesale or retail.

11. Gary DeBerge and John May ( "the parties") formed Renaissance Consortium, LLC (RC) As 50% partners, the "Agreement". Although no written operating agreement was drafted, there was an agreement between the parties which provided among other things the following as set forth below and a – o:

a) The Agreement provided for the parties to purchase and control single-family residential real estate deemed to be undervalued.

b) The purchased real estate would be resold at a profit to wholesale buyers, flippers, or in the alternative, improved and rehabilitated by RC and then sold for profit in the retail market.

c) May an experienced licensed appraiser with a degree from an accredited, University and with a major in accounting and finance from such university, was

responsible to identify potential properties for acquisition, and provide to DeBerge a proforma profit and loss P&L statement for the properties he recommended for acquisition.

d) May was to acquire the properties, establish among other things, financing for the purchase, construction, and rehabilitation costs, and provide the information to DeBerge in the P&L for approval.

e) Per their agreement May was not to proceed with an acquisition without DeBerge's approval.

f) DeBerge after approving the acquisition, then would be required to provide earnest money and required down payment funds at close of escrow COE and pay costs such as debt service, utilities, insurance, permit fees and fees from hired service providers.

g) May was to provide all accounting and administrative requirements including project cost and P&L's, financial reports and tax filings as required by law, along with any other pertinent information regarding the properties DeBerge as part of the parties' agreement.

h) May was also to provide DeBerge a complete and accurate accounting of all ongoing costs and net proceeds from each close transaction, the accounting period.

i) Per the agreement, the accounting was to be May's responsibility. The accounting from May was required from the beginning through the end of each project, purchase and resale of the properties, and necessary for the parties to make a final distribution based on such accounting. DeBerge had a right to rely on May's accounting and other financial representations from May to him because of May's expertise in these areas.

j) May had a physical office that he used for businesses he owned and other transactions. Made per the agreement was also to use his office space and employees for RC purposes and did so.

k) Both parties had check signing control.

l) DeBerge was to provide investment capital for the following: initial earnest money for approved projects, down payments required to satisfy acquisition and construction financing, debt service costs, dated expenses such as property and liability insurance, landscape maintenance, utilities, and real estate taxes. Marketing expenses such as signage, bandit signs, and door hangers and website developments were also his financial responsibility.

m) At project end when property was sold wholesale or retail, May was responsible for funds distribution according to the agreement. The distribution agreed to by the parties provided for any profits or losses to be distributed on a 50 – 50 bases between the parties. The agreement between the parties also if there was to be a 10% return on investment capital to DeBerge prior to the 50-50 split for any profits or losses.

n) Closing costs, title fees and sales commissions were charged against the P& L for each property.

o) Per the agreement DeBerge would receive a 10% interest payment for invested capital and expenses.

12. DeBerge was not reimbursement by May for losses and expenses on a number of properties as required by their agreement. May documented and summarized losses on 5 properties for which DeBerge was not paid for losses and expenses.

13. There are 2 other properties that resulted in losses, Glenrosa and Marion, that May has not reimbursed DeBerge for losses and expenses per their agreement. There exists other losses and expenses that DeBerge was not reimbursed for which discovery will reveal.

14. May has failed to provide accurate P&L's for all projects from RC and has failed to include all distributions and reimbursements in breach of the agreement.

15. In addition, for the Glenrosa project, the final draw of $10,000 from the finance company, Cost Fund 1, was taken by May without authorization from DeBerge and not applied to the Glenrosa project. Half of this amount should be added to the loss May owes DeBerge.

16. Notwithstanding repeated demands by DeBerge, may has refused and continues to refuse to provide DeBerge, and his accountant all in accordance with the agreement, with business reports, which would include P&L's, investments and what the basis would be all necessary information for filing of tax returns for years 2015, 2016 and 2017.

17. Basis is an accounting term so that one can determine taxable profit or losses.

18. May should be responsible to provide and pay for all additional tax filing costs and
late penalty fees.

19. May has at all times relevant hereto, and continues to, have accounting and reporting
responsibility whether performed by himself or one of his employees or an outside firm and verified by May.

## THE JOINT VENTURE

20. DeBerge and May , the parties also formed a joint venture, JV.

21. The JV was to purchase and resell Super Bowl tickets. A $35,000 loan was made by DeBerge secured by a deed of trust, DOT, on property owned by May. May misrepresented to DeBerge that he was secured by the DOT and in 1st position when he knew that DeBerge was in 2nd position on the DOT.

22. Tickets sold at a loss and May, per the parties' JV agreement was obligated to repay the loan in full plus any interest and penalties.

23. No final accounting was provided to support a loss occurred. May refinanced the 1st position loan to include funds to pay off the principal on DeBerge's note. However, he failed to pay the interest and penalties per the JV agreement and to date has not paid them to DeBerge in breach of the JV agreement.

24. During the COE process, DeBerge informed the title company that unpaid penalty was due to him. May refused to pay the penalty and interest which at the time was in the amount of $3293.90.

25. DeBerge closed without receiving payment of penalty or interest. He only did this because of duress. May told him that he would walk away from the project and allow DeBerge to try and foreclose on the DOT.

26. May owes all interest and penalties due on the 35,000 loan.

27. May also charged $554.85 and travel expenses to the RC debit card for travel to the Super Bowl site. DeBerge was not informed in advance of the trip nor did he ever agree to pay for it.

28. This JV was separate from RC. No provision was made to travel to the site in the JV agreement and DeBerge is entitled to be reimbursed for the same interests.

## $50,000.00 LOAN

29. DeBerge lent $50,000 to May, with May's office as collateral.

30. May agreed to keep his office free of any liens and other encumbrances to protect DeBerge.

31. May defaulted on the loan.

32. DeBerge attempted to foreclose on the collateral unsuccessfully

33. Although eventually May repaid the loan there still on interest and per diem penalties due from May to DeBerge on the loan.

## COUNT ONE

### (Exception from Discharge Under 11 U.S.C. § 523(a)(2) – RC, JV, 35K, 50K LOANS)

34. Plaintiff incorporates by reference the allegations of paragraphs 1-34 above as if set forth in full.

35. Plaintiffs are owed monies by the Mays as well as a full accounting by John May as per the parties agreement and as set forth in the factual allegations above.

36. The debt owed to plaintiffs by defendants were the result of May's fraud, false pretenses, false representations, or actual fraud concerning the monies he absconded.

37. As a result of may's actions and statements, his debt to Plaintiff is one for money obtained by false pretenses, false representations, or actual fraud.

38. In the alternative, as a result of May's actions and statements, his debt to Plaintiff is one for money obtained by use of among other things fraudulent statements as set forth above, that were materially false, respecting the real estate projects, and their profits and losses on which Plaintiff reasonably relied, and that May made or published with intent to deceive Plaintiff.

39. As a result of May's conduct, including without limitation the conduct described above, May's debt to Plaintiff should be excepted from any discharge he receives in this or any other bankruptcy case.

40. As set forth above with particularity, May made numerous false and misleading representations of material fact relating to the real estate projects and business dealings between the parties, leading May to believe that his monies invested would bring back a positive return. May further concealed material facts from Plaintiff and failed to give plaintiff the necessary accounting to determine all the monies wowed to plaintiffs.

41. May's concealments and nondisclosures concerning the projects financial situations created false impressions and are the equivalent of false representations.

42. May's false representations and concealments were material to Plaintiff's decision to invest in the projects described above.

43. May made his false representations and concealments with the intent that Plaintiff rely on them, and Plaintiff did in fact rely on may's false representations and concealments.

44. Plaintiff's reliance on may's false representations and concealments was reasonable.

45. As a result of May's false representations and concealments, Plaintiff was induced to invest in projects at a loss.

46. May's false representations and concealments have caused Plaintiff to suffer substantial damages in an amount of not less than $300,000.00.

47. As a result of May's false representations and concealments, Plaintiff invested for money obtained by false pretenses, false representations, or actual fraud.

48. As a result of may's false representations and concealments, including without limitation the conduct described above, May is liable the amounts described above in each project and such debt to Plaintiff should be excepted from any discharge May receives in this or any other bankruptcy case.

## COUNT TWO

### (BREACH OF CONTRACT, RC,JV,35K AND 50K LOANS)

49. Plaintiffs incorporate by reference the allegations of paragraphs 1-34 above as if set forth in full.

50. Plaintiff provided consideration to defendant and complied with the terms of all the agreements collectively the "Agreements" as set forth above.

51. Defendant failed to provide the necessary consideration and failed to comply with the terms of the Agreements as set forth above.

52. The breaches resulted in among other things plaintiff to lose significant monies.

53. Plaintiff has incurred significant damages including attorney's fees pursuant to the contract, agreement and ARS section 12 – 341.01 and is entitled to among other damages restitution and consequential damages in the amount to be established as and when required.

## COUNT THREE

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, RC,JV,35K AND 50K LOANS)

54. Plaintiffs incorporate by reference the allegations of paragraphs 1-34 above as if set forth in full.

55. Implied in the agreements were covenants of good faith and fair dealings precluded defendants from doing anything to impair the rights of plaintiffs to receive the benefit that flew that flow from the agreements.

56. Defendant was obligated to act in plaintiffs' best interest and not to prevent plaintiff from receiving the benefit of the agreements. Defendant May as set forth above

acted to deny plaintiff the benefit of the agreement and instead caused plaintiff irreparable harm. Defendant 's actions were in bad faith and constitute material breaches of the covenant of good faith and fair dealing.

57. As a direct and proximate result of defendant's conduct plaintiffs have been damaged in the past in an amount to be proven at trial.

58. Pursuant to ARS section 12 – 341.01 and the Agreements plaintiff is entitled to recover its attorney's fees and costs.

## COUNT FOUR
**(BREACH OF FIDUCIARY DUTY/BREACH OF DUTY OF LOYALTY, RC,JV,35K AND 50K LOANS)**

59. Plaintiffs incorporate by reference the allegations of paragraphs 1-59 above as if set forth in full.

60. Defendant owed plaintiffs a fiduciary duty to conduct himself in good faith in his dealings with plaintiffs, and to protect plaintiffs' interest.

61. The above actions and conduct by defendant May constitute a material breach of defendants' fiduciary duty owed to plaintiffs.

62. As a direct and proximate result of defendant's conduct plaintiffs have been damaged in an amount to be proven at trial including those amounts described above.

63. Defendants actions and conduct a set forth above were intentional and were committed with the intent to cause injury and deliberate disregard of an unjustifiable risk of significant harm to plaintiffs and were in breach of defendants' fiduciary duties to plaintiffs. Such harms among others including monetary damages and any damages arising out of the inability to file taxes for 2015, 2016 and 2017.

64. Punitive damages should therefore be awarded to plaintiffs in an amount to punish defendant and deter him and others similar similarly situated from engaging in like conduct in the future.

## COUNT FIVE
**(INTENTIONAL/NEGLIGENT MISREPRESENTATION RC,JV,35K AND 50K LOANS)**

65. Plaintiffs incorporate by reference the allegations of paragraphs 1-64 above as if set forth in full.

66. The agreements purported to give plaintiff a significant return on his investments, and on the loans to defendant as set forth above.

67. Plaintiff As set forth above later discovered the defendant instead of providing plaintiff with the required returns on his investments for the agreements, and with the loans, instead took his monies and profited thereon with plaintiff suffering significant losses.

68. Not only were the defendant's representations false and misleading as the projects proceeded defendant failed to give consideration to plaintiff under the agreement and failed to perform as required under them.

69. The defendant ass set forth above and as the projects went on either had no truthful factual basis for advising plaintiff that he would receive the benefits of the agreements or had no intention of ever giving plaintiff any meaningful return on his investment or repayment of the loans including the interest and penalties.

70. The defendant as the projects proceeded and as set forth above falsely represented to plaintiff that he would abide with the terms of the investments and loan agreements.

71. The defendant knew that the above described representations were false when he made them, or in the alternative, the defendant had no intention of following through on his promises in the agreements between the parties.

72. Plaintiff is entitled to rely on the representations was from were material is set forth above, made by the defendant and did so, , reasonably relying on those representations to his detriment.

73. Because of defendants' fraudulent actions, plaintiffs have suffered actual

and consequential damages in an amount to be determined at trial.

## COUNT SIX

74. Plaintiffs incorporate by reference the allegations of paragraphs 1-64 above as if set forth in full.

75. Plaintiffs are entitled to a full accounting as promised by defendant May.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment against Debtors John and Betty May granting the following relief:

A. Judgment in favor of Pursuant and against Debtor in the principal amount of $300,000;

B. Pursuant to 11 U.S.C. § 523(a)(2), an order excepting Plaintiff's claim against Debtor from any discharge Debtor receives in this or any other bankruptcy case he may file;

C. Punitive Damages;

D. An accounting by defendant on the projects;

E. For pre-judgment and post-judgment interest on all amounts awarded to the maximum extent permitted by law;

F. An award to Plaintiff of his attorney's fees and costs and expenses incurred in prosecuting this action; and

G. Any other relief the court deems appropriate and equitable under the circumstances.

DATED this 25th day of February 2019.

**CHENAL LAW FIRM PLLC.**

By /s/Carmen A. Chenal
Carmen A. Chenal
*Attorneys for Plaintiffs*